UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES KOCH, | ) | Case No.: 1:24 CV 31 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| LORAIN COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Defendants Lorain County and Lorain County Board of Commissioners, Sheriff Paul Stammitti, and Lieutenant Mike Crum's (collectively, "County Defendants" or "Defendants") Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. (ECF No. 37.) For the following reasons, the court grants Defendants' Motion for Summary Judgment.

## I. BACKGROUND

**A. Factual Background**

<u>1. August 23, 2023 Incident</u>

This case involves an incident at the Lorain County Jail on August 23, 2023, during which Plaintiff Charles Koch ("Koch") alleges that a correctional officer used excessive force against him in violation of his federal and state rights. (Compl. at PageID 2–3.) Charles Koch is a thirty-five year old man who has been diagnosed with Bipolar Disorder (Defs.' Mot. at PageID 196, 200.) In 2022, he was found not guilty by reason of insanity on two assault counts and ordered by the presiding Judge, Judge Cook, to conform to mental health treatment and medication. (Compl. at PageID 5.)

In August 2023, Judge Cook was informed of Koch's noncompliance, and that he had been involuntarily hospitalized for a severe mental health break. (*Id.*) At the request of Koch's Forensic Monitor, Judge Cook issued a capias warrant for Koch's arrest. (*Id.* at PageID 5–6.)  After Koch had been in custody at the Lorain County Jail for almost two weeks, Judge Cook ordered Koch to be transferred to the North Coast Behavioral Hospital. (*Id.* at PageID 6.) It is during this transfer that the incident at the center of this case took place. On August 25, 2023, Koch was prepared for transport to North Coast Behavioral Hospital by Correctional Officer Ruben Ortiz ("Ortiz") at the Lorain County Jail. (Compl. at PageID 6; Defs.' Answer at PageID 83.) Koch alleges that while being prepared for transport, Ortiz physically assaulted him without provocation, as other officers witnessed and allowed the beating. (Compl. at PageID 2–3.) Both Koch and Ortiz agree that the incident was caught on film. (Ct. Order, Sept. 24, 2025; Ortiz Answer at PageID 120.) Following the incident, Sheriff Stammitti terminated Ortiz's employment. (Crum Decl. at PageID 177.)

2. LCSO Disciplinary Record

Koch attached as an exhibit Ortiz's disciplinary record. (ECF No. 38-1, Disciplinary Record.) The incidents in the record span from 2005 to 2023, and show that Ortiz has been reported and disciplined for excessive displays of force in the past. The record contains inmate grievance reports and officer incident reports that were made in response to five incidents. The disciplinary incidents are summarized briefly as follows, in chronological order.

*a) Melendez Incident in 2005*

In August 2005, Ortiz was written up by his superior for placing inmate Melendez into the restraint bed without the required approval. (Disciplinary Record at PageID 243.) Ortiz first stated that he was told by another officer on duty to do so, but later said that, "he assumed since most

residents who flood cells are placed into the restraint bed," this inmate would be as well. (*Id.* at PageID 243.) Other officers refuted Ortiz's version of events, denying that he was ever given approval or instruction to restrain Melendez or other inmates using a method contrary to protocol. (*Id.* at PageID 287–89.)

b) *Bell Incident in 2005*

In October 2005, Ortiz was involved in a physical altercation with inmate Bell. (Disciplinary Record at PageID 246.) In response to "disrespectful" comments, Ortiz "arranged to be relieved from his post and then escorted Inmate Bell into the hallway," where a verbal and physical confrontation ensued. (*Id.*) Sergeant Tomlin reviewed and recommended disciplinary action, sending the report to Lt. Crum and concluding Ortiz "did not use excessive force," but "did show bad judgment . . . [had Ortiz] not confronted Res. Bell . . . it never would have happened." (*Id.*) At Ortiz's pre-disciplinary conference, Captain Rieber reviewed the recording of the incident and observed, "the apparent intention of Officer Ortiz was to take Inmate Bell to the floor." (*Id.* at PageID 282–84.) The report was sent to Sheriff Stammitti. The Sheriff concluded that Ortiz violated LCSO policies regarding "physical mistreatment of a prisoner in an Officer's custody or control" and "failure to use reasonable care and control over [LCSO's] property or equipment." (*Id.* at PageID 255.) Sheriff Stammitti suspended Ortiz for three days and rescinded his December bonus. (*Id.* at PageID 281.) The notice of suspension indicates that Ortiz had previously been cautioned against further offenses on November 7, 2004, and had received a written reprimand on August 31, 2005. (*Id.*)

c) *Miller Incident in 2010*

In March 2010, Ortiz was accused of using excessive force against inmate Miller. The incident occurred as Ortiz and two other officers attempted to break up a fight between Miller and another inmate. (Disciplinary Record at PageID 271–80.)  Numerous inmate grievance forms were written after this incident, with complaints describing that Ortiz brought Miller to the ground, and, once he was down, proceeded to knee him in the head. (*Id.*) The strike was with such force that Miller's head hit the floor and he went unconscious, not moving for quite some time. (*Id.*) One inmate report specified that Ortiz "use[d] excessive force . . . kneed one inmate in the face after he was already down, knocking him out." (*Id.* at PageID 275.) There is nothing in the record indicating what, if any, disciplinary actions were ultimately taken against Ortiz in response to this incident. (*See generally id.*)

*d) Cadman Incident in 2013*

Ortiz was again accused of excessive force for his treatment of inmate Cadman on April 17, 2013. Inmate  Cadman reported that he was "in handcuffs and complying with orders," when Ortiz "smacked his head against the wall and floor twice and stood on Cadman's head with his knee grinding it into his temple." (Disciplinary Record at PageID 269.) Ortiz's encounter with Cadman was also caught on video. (*Id.* at PageID 252–54.) The footage differed from Ortiz's telling of events. (*Id.*) The video showed that Ortiz, "escort[ed] Cadman . . . in a hurried fashion by himself," placed him against the wall, and appeared to strike him in the back of the head. Other officers present made "no reactive moves." (*Id.* at PageID 254.) Cadman was then brought to the ground and shackled, and Ortiz kneeled on Cadman's head. (*Id.*)  The incident reports completed by Ortiz and other officers denied any knowledge that Ortiz struck Cadman. (*Id.* at PageID 254–55.) Corporal Kish and Captain Drozdowski both investigated the incident, and concluded that Ortiz's use of force was "not a

justified response to resistance in this situation." They issued a Recommendation for Disciplinary Action for the major offense of physical mistreatment and a handful of minor offenses.  (*Id.* at PageID 255.) There is nothing in the record indicating what, if any, disciplinary actions were ultimately taken against Ortiz in response to this incident. (*See generally id*.)

> *e) Malone Incident in 2023*

Finally, on April 21, 2023, Ortiz was reported for "direct violations of facility protocol" regarding inmate safety. (Disciplinary Record at PageID 244.) LCSO's "established safety protocols" require that officers place inmates with an extensive history of violence, such as Malone, in wrist and ankle restraints when removed from their cells. (*Id*.) Ortiz removed Malone from his cell "not fully restraining Inmate Malone, and having [another inmate] completely unrestrained while on recreation." (*Id*. at PageID 244–45.)  This violation was discovered by reviewing video footage. (*Id*.) Ortiz stated that, "he did this based on past practice . . . permitted by shift supervisors."  (*Id*.) His shift supervisors denied ever allowing the violation. (*Id*.) Sergeant Schrenkel concluded that Ortiz had engaged in the "failure to observe" the rules of the Lorain County Sheriff's Office, concluded that Ortiz was a "veteran officer that knows policy and procedure." (*Id*.) There is nothing in the record indicating what, if any, disciplinary actions were ultimately taken against Ortiz in response to this incident. (*See generally* Disciplinary Record.)

**B. Procedural History**

Charles Koch brings suit against multiple County Defendants asserting claims related to the August 23, 2023, use of force incident. Koch filed his Complaint on January 5, 2024, pursuant to 42 U.S.C. § 1983. (Compl. at PageID 1–2.) He alleges a violation of his Fourth Amendment rights by the following Defendants: Lorain County, Ohio and the Lorain County Board of Commissioners,

Sheriff Phil R. Stammitti, in his official capacity, Lieutenant Mike Crum ("Lt. Crum"), in his individual and official capacity, Ruben Ortiz, in his individual and official capacity,[1] and John Doe officers 1-3, in their individual and official capacities. (*Id*.) The Complaint also seeks relief for violations under state law. (*Id*. at PageID 2–3.)

In Count One, Koch brings a claim against Ruben Ortiz for excessive force. (*Id*. at PageID 10.) In Count Two, he seeks relief for assault and battery under Ohio law. (*Id*. at PageID 11.) In Count Three, Koch brings a claim pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), for municipal liability against Defendants Lorain County Ohio and Board of Commissioners, Sheriff Stammitti, and Lt. Mike Crum. (*Id*. at PageID 12.) Count Four is a claim for Spoliation against all Defendants. (*Id*. at PageID 14.) Finally, Count Five seeks relief for gross negligence against all County Defendants, and Count Six seeks relief for gross negligence against John Does 1-3. (*Id*. at PageID 14–16.)

Defendants Lorain County and Lorain County Board of Commissioners, Sheriff Phil Stammitti, and Lieutenant Mike Crum filed their Answer (ECF No. 18) on April 26, 2024, denying any violation of Koch's rights. On January 24, 2025, Defendants filed this Motion for Summary Judgment ("Motion"). (ECF No. 37.) Defendants assert they are entitled to summary judgment on all federal and state law claims because Plaintiff cannot produce evidence in support of each of the elements of such claims, and on federal and state immunity grounds. (*Id*.) Plaintiff filed his Opposition (ECF No. 38) to the Motion for Summary Judgment ("Opposition") on February 24, 2025. Defendants submitted their Reply (ECF No. 29) on March 10, 2025. The matter is now ripe

---

[1]    Ruben Ortiz is represented by separate counsel and has not joined this Motion. (ECF No. 37 at PageID 159, fn. 1.)

for decision.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs summary judgment and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 599 (1986) (citation omitted). If the evidence "is so one-sided that one party must prevail as a matter of law," there is no genuine issue for trial and summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The movant has the initial burden of production to make a prima facie showing that it is entitled to summary judgment by "citing to particular parts of materials in the record; or showing that the materials cited do not establish the absence or presence of a genuine dispute." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986); Fed. R. Civ. P. 56(c)(1). If the moving party meets this burden, then the non-movant has an affirmative duty to point out specific facts that demonstrate a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). In order to survive a motion for summary judgment, there must be more than "a scintilla of evidence," such that a "fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

It is a "fundamental principle" of the summary judgment stage that the evidence be viewed

"in the light most favorable to," and with "reasonable inferences . . . drawn in favor of," the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657, 660 (2014). At the same time, the court must avoid improperly weighing the evidence, and be careful to draw inferences only "to the extent supportable by the record." *Scott v. Harris*, 550 U.S. 372, 381 (2007). The court may consider other materials in the record that were not cited by the parties in deciding whether a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(3). However, the trial court does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. DISCUSSION

Defendants move for summary judgment on all claims. Defendants invoke affirmative defenses of immunity for the official-capacity suits against Sheriff Stammitti and Lt. Crum. Summary judgment is sought for the individual capacity suit against Lt. Crum, on the basis that he has not personally violated Plaintiff's rights. Finally, Lorain County asserts summary judgment must be decided in its favor because even if Koch suffered a constitutional violation, it was not pursuant to a County policy or custom. The court will first address Plaintiff's claims arising under federal law.

**A. Federal Claims Against County Defendants**

Section 1983 provides a remedy for any person who is deprived of their constitutional rights by another person acting under the color of state law. *See* 42 U.S.C. § 1983. To state a claim under § 1983, the complaint must show that: "(1) [plaintiff] was deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law." *Carmichael v. City of Cleveland*, 881 F. Supp. 2d 833, 847 (N.D. Ohio 2012 (citing *Redding v. St. Eward,* 241 F.3d 530, 532 (6th Cir. 2001)).

In Count Three, Plaintiff seeks relief under Section 1983 for the alleged violation of his Fourth and Fourteenth Amendment rights by the County, Sheriff Stammitti, and Lt. Crum. (Compl. at PageID 12.) Defendants argue that Plaintiff has not shown any constitutional injury took place and therefore cannot seek § 1983 relief. (Defs.' Mot. at PageID 168.)

1. Violation of a Constitutional Right

Plaintiff must first show that he suffered a deprivation of his constitutional rights in order to bring claims under Section 1983. *See, e.g.*, *Cook v. Boss*, No. 1:22 CV 1535, 2024 WL 1347568, at *3 (N.D. Ohio Mar. 30, 2024) (citing *Harris*, 489 U.S. at 380), *aff'd* No. 24-3350, 2025 WL 304607 (6th Cir. Jan. 27, 2025)). Koch alleges that his Fourth Amendment rights were violated because "Ortiz and John Does 1-3 used unreasonable, gratuitous, and excessive force." (Compl. at PageID 3, 10.) Plaintiff stated the disturbing facts as follows:

> Without any provocation, while partially restrained, Defendant Ortiz threw Mr. Koch's head into a brick wall, then began landing several unblocked, closed-fist strikes to the face of Mr. Koch. From there, he slammed Mr. Koch's head on a nearby bench and took him to the ground. Once on the ground, Defendant Ortiz landed several more unblocked strikes to the head and face of Mr. Koch. At no time during the assault, did Mr. Koch attempt to defend himself or resist . . . During the assault, John Does 1-3 were nearby and in sight of the camera. At no time did they intervene to prevent the assault. Toward the end, rather than remove Defendant Ortiz, they piled onto Mr. Koch to further restrain him.

(*Id*. at PageID 6.) The Sixth Circuit has held that, "the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." *Kalvitz*, 2017 WL 6805678, at *7 (citing *Baker v. City of Hamilton,* 471 F.3d 601, 607 (6th Cir. 2006)).  In *Kalvitz*, the court explained that after the "officer knocked him to the ground, incapacitated," any further use of force was a violation of the plaintiff's Fourth Amendment rights. *Id*.

Likewise, with reasonable inferences drawn in favor of Koch, the video evidence[2] of the incident demonstrates that he suffered a Fourth Amendment violation. The footage shows Koch standing and having restraints placed on him by Ortiz. Koch does not move, attempt to get away, physically assault or touch, or use any force to prevent his being restrained. As Ortiz is restraining Koch, they appear to be conversing with one another. No other officers intervene or react to any conduct or statement by Koch. At roughly 00:37 of the video, Ortiz appears to immediately react to a statement made by Koch by shoving him against the wall, hitting him on the head repeatedly, and bringing him to the ground. Koch had cooperated as the shackle was placed around his waist, but was not yet handcuffed at the time that he was shoved against the wall. Once Koch is on the ground, Ortiz kneels on him and continues to land blows. There is no appearance of resistance or fighting back from Koch. At roughly 00:45, other officers in the vicinity become physically involved, holding Koch's legs and arms. While he is restrained, on his stomach on the floor, with several officers on top of him and restraining him, Ortiz continues to hit him. A reasonable jury could conclude that this evidence shows that force was used against Koch while he was, "incapacitated or neutralized," amounting to a Fourth Amendment violation. *Kalvitz*, 2017 WL 6805678, at *7. The above-cited evidence raises a genuine issue of material fact of whether Koch's constitutional rights were violated.

### 2. Whether the Deprivation of Constitutional Rights was Caused by Lt. Crum

Plaintiff claims Lt. Crum is liable in his individual capacity pursuant to *Monell*. (Compl. at 12–14.) When a state actor is sued in their individual capacity, the plaintiff bears the burden of showing that individual officer caused the constitutional violation that they suffered. *See, e.g.*,

---

[2]      Inasmuch as neither party filed a copy of the video footage of the incident, which was referenced in their respective briefs, the court requested a copy from Plaintiff's counsel on 9/22/25, which he provided. *See* Ct. Order [non-document] entered 09/24/25.

*Venema v. West*, 133 F.4th 625, 632 (6th Cir. 2025). Accordingly, a supervisor cannot be liable under a theory of respondeat superior. *See, e.g.*, *Winkler v. Madison Cnty.*, 893 F.3d 877, 898 (6th Cir. 2018) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Instead, a supervisory liability claim, "like all individual capacity claims, requires an allegation of personal liability." *Venema,* 133 F.4th at 633 (citing *Peatross v. City of Memphis*, 818 F.3d 233, 239 (6th Cir. 2016)).

The Sixth Circuit has explained that, "even if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009) (internal citation and quotation marks omitted). To hold an officer liable for their subordinate's constitutional violation, the plaintiff must show that the supervisor either had "direct participation" in the injury, "or, at the very least, active acquiescence in the known misconduct." *Winkler*, 893 F.3d at 899 (citing *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013)). A defendant-supervisor may be liable for knowingly acquiescing to unconstitutional conduct if they "abandoned the specific duties" of their role. *Venema*, 133 F.4th at 635 (quoting *Winkler*, 893 F.3d at 898 (cleaned up)). Here, Koch does not claim that Lt. Crum was a direct participant in his injury. Therefore, he must prove that Lt. Crum in some way "abdicated his specific job responsibility, with the '*active performance* of the supervisor's individual job function . . . directly resulting in the constitutional injury.'" *Winkler*, 893 F.3d at 898–99 (cleaned up) (emphasis in original) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006)).

Defendants seek summary judgment on the grounds that there is no evidence to support the conclusion that Lt. Crum was personally involved, nor knowingly acquiesced, to a violation of Koch's Fourth Amendment rights. (Defs.' Mot. at PageID 166–67.) As an initial matter, the

Complaint lacks any allegations about Lt. Crum's role specifically. Koch states identical allegations against Lt. Crum, the County, and the Sheriff, claiming broadly that he, "demonstrate[d] a pattern practice of failing to adequately train, supervise, investigate and discipline officers," amounting to "customary and deliberate indifference to the rights of inmates." (Compl. at PageID 12–14.) The court agrees that Koch has not offered evidence to show that Lt. Crum executed, or failed to execute, his job duties in such a way that caused the deprivation of Koch's rights.

The only evidence in the record pertaining to Lt. Crum's job duties come from his declaration. Lt. Crum describes his job duties as, "training other employees, conducting investigations, scheduling employees, and performance of miscellaneous other tasks." (Crum. Decl. at PageID 175.) He specifically states that his job duties do *not* include hiring and firing, disciplining officers, or deciding the contents of written policies. (*Id*. at PageID 175–76.) Lt. Crum further asserts that, "I have always exercised care in the performance of my duties for LCSO, and have never abandoned them." (*Id.*) Koch did not provide any evidence refuting Crum's description of his job responsibilities.

To support his argument that Lt. Crum knowingly acquiesced, Koch points to Ortiz's disciplinary record, reasoning that: "[some report letters] are directly addressed to Defendant Crum. His refusal to act and prevent further acts of violence renders him liable. He cannot argue that he was unaware of the conduct." (Pl.'s Resp. at PageID 238–39.) Therefore, Koch argues, Lt. Crum's "knowledge and liability are to be decided by the trier of fact." (*Id.*) But Koch bears the burden of showing that Lt. Crum personally violated his constitutional rights because he "completely abdicated" his job responsibilities, *Winkler*, 893 F.3d at 899, and he has not met this burden. In fact, a review of the disciplinary record only supports the conclusion that Lt. Crum had very limited involvement. The record is void of any affirmative evidence showing Lt. Crum's role in continuing

-12-

to employ Ortiz. Though he was in some instances named as a recipient of letters reporting Ortiz's conduct, nothing suggests that he had authority to discipline or fire Ortiz. In four of the five letters addressed to Lt. Crum, it is jointly addressed to higher ranked officers. (Disciplinary Record at PageID 243–44, 246–48.) Furthermore, Lt. Crum did not write any of the final pre-disciplinary reports. (*Id.* at PageID 252–55, 282–84). Those final reports were routinely sent "to the Sheriff for consideration of disciplinary action in accordance with [LCSO's] Policy and Procedure." (*See, e.g.*, *id.* at PageID 255.) It was the Sheriff who disciplined Ortiz in past incidents in the record, (*id.* at PageID 281), and who ultimately made the decision to terminate Ortiz after the incident with Koch. (*Id.* at PageID 177.)

The evidence in the record creates no genuine issue of material fact as to whether Lt. Crum abdicated his job duties or otherwise violated Koch's Fourth Amendment rights. Therefore, summary judgment is granted as to Koch's claim against Lt. Crum in his individual capacity.

3. Whether the Deprivation was Caused by the County Pursuant to *Monell*

Counties and other units of local government may be sued directly for monetary, declaratory, or injunctive relief pursuant to 42 U.S.C. § 1983, if they are "alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (citing *Monell*, 436 U.S. 658, 690 (1978)). When assessing a Section 1983 claim against a municipality, courts must consider two issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Hts., Tex.*, 503 U.S. 115, 120 (1992). The Supreme Court has held that a municipality can be liable under Section 1983 only if the municipality *itself* caused the alleged constitutional violation. *City of*

*Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted) (emphasis in original). In Count Three, Koch seeks relief pursuant to *Monell* and names all County Defendants. (Compl. at PageID 12.)

As an initial matter, Lorain County is the appropriate party for the *Monell* claim. The Sixth Circuit has held that when "subunits" of local government such as LCSO are sued, the appropriate defendant is the municipality or county those departments serve. *Warman v. Mount St. Joseph Univ.*, 144 F.4th 880, 891 (6th Cir. 2025). Furthermore, under Ohio law, a board of commissioners "has no liability for the actions of the sheriff's department employees absent a showing that the board assumed a supervisory or policymaking control over the sheriff's department in violation of statute." *Slough v. Telb*, 644 F. Supp. 2d 978, 999 (N.D. Ohio 2009). Here, the only evidence pertaining to the Board is that it did not assume this control. (Crum Decl. at PageID 175.) However, "a suit against a government official in his official capacity is treated as a suit against the government entity," and the County will be liable if Koch's rights were violated pursuant to County policy or custom. *Loggins v. Franklin Ctny.*, 218 F. App'x 466, 471 (6th Cir. 2007) (citation omitted).

To find a municipality liable for a constitutional violation, the plaintiff must prove that their injury was caused as a result of the execution of official policy or custom. *Harris*, 489 U.S. 378, 385. An official policy includes "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *D'Ambrosio v. Marino*, 747 F.3d 378, 386–87 (6th Cir. 2014) (quoting *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011)). A plaintiff typically "needs to point to a municipality's existing policy or lack thereof, or compile instances of similar events to the ones forming the basis for the claim." *Rolen v. City of Cleveland*, No. 1:12 CV 1914, 2013 WL 12145960, at *14 (N.D. Ohio Aug. 7, 2013). Koch alleges that the excessive force used against him was the result of a "pattern practice of failing to adequately train, supervise, investigate and discipline officers relating to excessive,

unconstitutional and illegal use of force on inmates." (Compl. at PageID 12–13.) A municipal liability claim on these grounds must allege the existence of "a policy of inadequate training or supervision . . . or a custom of tolerance or acquiescence of federal rights violations." *Rolen*, 2013 WL 12145960, at \*4 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

### a) Inadequate Training or Supervision

Koch argues that Lorain County failed to adequately train and investigate its officers as to the appropriate use of excessive force against inmates. The County argues that Koch cannot show training was inadequate, because the evidence shows that LCSO provides adequate training on the use of force against inmates. As the Sixth Circuit has held, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989). A plaintiff must prove that the training or supervision was inadequate, as a result of the municipality's deliberate indifference, and the inadequacy proximately caused the injury. *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Here, Koch's argument fails on the first prong.

To demonstrate the adequacy of its training and policies on the excessive use of force, the County has provided its Response to Resistance/Aggression Policy ("Use of Force Policy" or "Policy"), and the relevant portions of Lt. Crum's Declaration that speak to training. (Defs.' Mot. Ex. A–B.) The Use of Force Policy, reviewed at least as recently as 2022, has the stated purpose to "establish specific guidelines concerning the response to resistance/aggression by employees." (Use of Force Policy at PageID 178.) The 17-page Policy prohibits "indiscriminate" use of force, and provides a specific, detailed "use of force continuum." (*Id*. at PageID 178–81.) This continuum guides officers on the appropriate level of force needed in any given situation to "resolve disputes."

(*Id*.) It states that the officer's use of force must be "reasonable," and "needed to perform lawful objectives." (*Id*.) All officers are required to read the Policy and are given a copy at the start of employment. (Crum Decl. at PageID 175.) In addition, LCSO requires all deputies to complete a "twelve-week training program at the beginning of their employment," that includes "full-time on-the-job practical training on LCSO policies." (*Id*. at PageID 176.) Roughly once per year, deputies are re-trained and given feedback on "the use of force, including subject control and defensive tactics." (*Id*.) Finally, all deputies must have certification from the Ohio Peace Officer Training Academy. (*Id*.)

On the other hand, Koch does not proffer *any* evidence to demonstrate that LCSO's training or policies on the use of force are inadequate. He does not discuss the contents of any trainings, how they were deficient, or what adequate training would have entailed instead. Koch points solely to his "attachment containing lengthy list of reports of [Ortiz's] violent infractions against inmates." (Pl.'s Resp. at 236.) There is no genuine dispute as to whether the County failed to train their officers on the use of force, and the County cannot be held liable on a theory of inadequate training.

### b) Failure to Investigate and Custom of Tolerance or Acquiescence

Koch further argues that the County has a custom of allowing "their officers to use illegal and unconstitutional force . . . without being held accountable or disciplined appropriately for their misconduct." (Compl. at PageID 12.) He alleges his injury was the result of the County's "countless past occurrences that went without appropriate action," "overlooked uses of excessive force," and customary allowance of "agents and officers to engage in the use of excessive force without proper reprimand or training to the contrary." (*Id*. at PageID 8–9.) To hold the County liable on the theory that it customarily did not investigate or hold officers accountable for excessive force, there must be a demonstrated "pattern of inadequate investigation of similar claims." *Burgess*, 735 F.3d at 478–79.

One instance is insufficient to find custom, and "numerous courts have rejected a custom-of-tolerance theory of liability when there are only two or three prior instances of similar conduct." *Rodgers v. Cnty. of Oakland*, No. 18-12832, 2021 WL 5280075, at *9 (E.D. Mich. Nov. 12, 2021) (collecting cases). The plaintiff bears the "heavy burden" of showing that there is a "clear and persistent . . . deliberate pattern" of tolerating constitutional violations. *Thomas*, 398 F.3d at 432–33.

Although there is no bright-line rule, finding a custom of tolerance generally requires numerous similar instances, over a short period of time, involving more than one person. For example, the Sixth Circuit found that a paraplegic inmate had demonstrated a custom of tolerance where "at least 14 other paraplegics had received similar deplorable treatment" within a two-year period. *Leach*, 891 F.2d at 1247; *cf. Ellis*, 455 F.3d at 701 (finding that only two incidents within a two-year period was insufficient). However, in *Thomas v. City of Chattanooga*, the court found that the plaintiff had not demonstrated custom where he pointed to forty-five excessive force lawsuits against the defendant police department, over roughly the preceding eight years. 398 F.3d at 430–31. The Sixth Circuit explained that, "the court disagreed . . . that the number of complaints against the city in and of themselves demonstrated an unwritten policy of condoning excessive force," and the plaintiff had not otherwise "set forth the basis or reasoning" for how the complaints proved custom. *Id*. at 431.

In light of this demonstrably high burden to show there is a widespread pattern and custom of tolerance, Koch has clearly fallen short. Koch offers as evidence only Ortiz's disciplinary record. The record contains five disciplinary incidents spanning nearly twenty years of Ortiz's employment. (*See* Disciplinary Record.) Two incidents occurred in 2005, with the others taking place in 2010, 2013, and 2023. (*Id*.) The most recent incident did not involve excessive force allegations at all. Moreover, the remaining four incidents only involve allegations of Ortiz using excessive force.

Koch did not provide evidence that any other officers engaged in excessive force like Ortiz. Koch's reliance on only four incidents of excessive force, by one officer, and spanning the years from 2005–2023, is not enough to infer a widespread pattern of excessive force. And Koch does not otherwise give any explanation of how the evidence shows custom, only claiming conclusively that the "lengthy list of reports . . . indicate that sufficient action was not taken." (Pl.'s Resp. at PageID 236.) This is plainly insufficient to show a widespread pattern.

Even if there was widespread use of excessive force, the record does not support a finding that there was a custom of tolerating it. After every use of force incident, all deputies must "provide thoughtful justification" in writing. (Defs.' Mot. at PageID 164.) Reviewing officers routinely set the record straight when Ortiz's telling of events obfuscated his use of force. (*See* Disciplinary Record at PageID 248, 255, 287–89.) Moreover, there is no evidence that the Sheriff failed to appropriately punish excessive force. (*See* Pl.'s Resp. at PageID 243–90.) The Sheriff terminated Ortiz's employment as a result of the use of force against Koch. (Crum Decl. at PageID 177.) Indeed, the only evidence about the appropriateness of the Sheriff's past punishments comes from Lt. Crum, who stated that: "for every instance of which I have been aware during my over thirty years with LCSO in which an LCSO employee violated an LCSO [sic], he or she was disciplined in accordance with LCSO's disciplinary policies . . . [Sheriff] has disciplined deputies for using excessive force prior to [this] incident . . . I am not aware of any situation in which Ruben Ortiz violated LCSO policy and was not disciplined in accordance with LCSO's disciplinary procedures and applicable collective bargaining agreements." (*Id*. at PageID 176.) Koch did not offer any evidence to the contrary.

No reasonable jury could conclude that the County has a custom of failing to investigate or

tolerating excessive force. Koch has not met his burden of showing a "custom of tolerating officers' use of excessive force on handcuffed or otherwise incapacitated individuals." *Kalvitz*, 2017 WL 6805678, at *11. Thus, the County could not have been the "moving force" behind Ortiz's violation. *Id.* Summary Judgment is granted as to Plaintiff's *Monell* claims in Count Three.

**B. State Law Claims**

    1. <u>State Law Claims Against the County Defendants, Including the Sheriff and Lt. Crum in his Official Capacity</u>

Plaintiff brought state law claims for gross negligence and spoliation of evidence against all of the Defendants. They each have claimed immunity with respect to such claims.

Political subdivisions are entitled to immunity against claims for injury, death, or loss to persons or property related to their governmental or proprietary functions as stated in Ohio Revised Code § 2744.02(A)(1). In this case, that immunity would extend to the County Board of Commissioners, to Sheriff Stammitti, who was sued only in his official capacity, and to Lt. Crum, to the extent he was sued in his official capacity. *See, e.g.*, *Lambert v. Clancy*, 2010-Ohio-1483, ¶ 17, 125 Ohio St. 3d 231, 236, 927 N.E.2d 585, 590 (explaining "political subdivision includes counties," and concluding "the three-tiered political-subdivision-immunity analysis" applies to an employee "sued in his official capacity"). The court will separately address the individual state law claims asserted against Lt. Crum.

The immunity accorded to political subdivisions under Ohio Revised Code. § 2744.02 has five exceptions. These exceptions relate to the negligent operations of a motor vehicle, the negligent performance of a proprietary function, the failure to maintain a public road, injury or loss caused by physical defects within or on the grounds of a building used for governmental functions, or where liability is imposed by another section of the Ohio Revised Code. Ohio Revise Code §§

-19-

2744.02(B)(1–5). None of the exceptions apply here. The exception regarding the performance of a proprietary function arguably could apply, *id.* § 2744.02(B)(2), but functions designated as governmental are excluded from the definition of proprietary functions. Ohio Rev. Code § 2744.01(C). As expressly stated in that section, governmental functions include the provision or non-provision of police services, the power to preserve the peace, and the operation of jails. *Id.* §§ 2744.01(C)(2)(a–b), (h). In this case, the incident took place when Koch was being prepared for transport at the Lorain County Jail. This clearly involved the provision or non-provision of police services and/or the operation of jails. Consequently, none of the exceptions to immunity for political subdivisions apply.

Therefore, the Board of Commissioners, Sheriff Stammitti, and Lt. Crum, in his official capacity, are entitled to statutory immunity on the state law claims asserted herein related to responsibility for the attack Koch allegedly suffered at the hands of Defendant Ortiz, who is not a party to this Motion. They are also entitled to immunity on Plaintiff's claim for spoliation of evidence, an intentional tort claim. Whether or not that claim might be regarded as growing out of or related to a proprietary function, there is clearly no exception for intentional torts in Ohio Revised Code § 2744(B)(2). Therefore, the court hereby finds that there is no material issue of fact regarding these claims, and that judgment is granted as a matter of law.

2. State Law Claims against Lt. Crum, in his Individual Capacity

Ohio Revised Code § 2744.03(A)(6) provides that an "employee is immune from liability unless one of the following applies: (a) [t]he employee's acts and omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Lt. Crum maintains that there is no evidence before the court that he ever acted outside the scope of his authority, nor that he ever acted in a wanton or reckless manner in regard to Plaintiff. (Defs.' Mot. at

-20-

PageID 170–71.)

In Count Four, Koch brings a claim for spoliation, alleging Lt. Crum failed to preserve evidence of Plaintiff's injuries "intentionally to avoid the consequences of the vicious attack inflicted upon Charles Koch." (Compl. at PageID 14–15.) A claim for spoliation requires a plaintiff show: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Elliott-Thomas v. Smith*, 2018-Ohio-1783, 154 Ohio St. 3d 11, 13, 110 N.E.3d 1231, 1233 (citation omitted). Here, Plaintiff fails to do so.

Koch alleges "all defendants failed to act appropriate [sic] to preserve evidence," because he "was not examined by medical personnel, nor were pictures taken of his injuries." (Compl. at PageID 14.) Koch further alleges that they failed to preserve this evidence, "to avoid the consequences of the actions of the vicious attack inflicted upon" him. (*Id*.) These bare allegations are insufficient to state a claim for spoliation against Lt. Crum. Koch does not refute Lt. Crum's assertion that he has "never interacted" with Koch (Crum Decl. at PageID 177), and does not otherwise explain how Lt. Crum interfered with the preservation of evidence. Koch also does not allege that Lt. Crum knew about the incident as it happened, let alone that he knew of the resulting pending litigation, nor does Koch allege what disruption to the case resulted, or how he suffered damages. In his Brief in Opposition, Koch responds that it is "still too soon to tell whether all evidence was properly secured and preserved" (Pl.'s Resp. at PageID 241), perhaps unintentionally conceding that summary judgment is appropriate. The court cannot deny the granting of summary judgment when Plaintiff puts forth no evidence to counter that put forth by Lt. Crum that he was not involved in the spoliation of evidence. There being no material issue of fact, the court hereby grants summary judgment to Defendant Lt. Crum on this

claim.

Count Five alleges Lt. Crum is liable for gross negligence. To establish a claim for gross negligence, Koch must first establish negligence. *See, e.g.*, *Thompson Elec., Inc. v. Bank One, Akron, N.A.*, 37 Ohio St. 3d 259, 265, 525 N.E.2d 761, 768 (1988). Then, Koch must prove that Lt. Crum's behavior rose above mere negligence to the level of bad faith or wanton or reckless conduct, thus stripping him of immunity under Ohio Revised Code § 2744. Here, Koch cannot show that his injuries were caused by Lt. Crum's negligence, and therefore this claim fails at the first step.

To prove negligence, a plaintiff must demonstrate the existence of duty, breach of that duty, and "an injury resulting proximately therefrom." *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St. 3d 75, 77, 472 N.E.2d 707, 710 (1984). First, Koch alleges that Lt. Crum breached his duty to protect those in his custody, "by continuing to employ an officer that has consistently displayed a pattern of violence against those in his custody." (Compl. at PageID 15.) Koch further alleges that the breach rose to the level of willful and wanton disregard "due to the numerous documented prior occurrences." (*Id.*) As an initial matter, Koch did not address the issue, raised by Defendant, that Koch would not be able to establish that Lt. Crum owed him a duty in this case. The record is void of any affirmative evidence showing Lt. Crum's role in continuing to employ Ortiz, or that he had any ability to impact hiring or firing decisions. To the contrary, and as discussed when resolving Koch's supervisory liability claim, the evidence in the record reflects that Lt. Crum's duties do not include hiring or firing, nor does he have control over policies. (Crum Decl. at PageID 175.) Koch does not refute this, nor has he provided affirmative evidence of what Lt. Crum's duties entailed.

But even if Koch had shown that he was owed a duty from Lt. Crum, and even viewing the evidence in the light most favorable to him, Koch cannot show that Lt. Crum's breach caused his injuries. The vast majority of reports in the record are neither addressed to nor mention anything about

Lt. Crum. (*See generally* Disciplinary Record.) Lt. Crum was not the recipient of "Miscellaneous Reports"/Incident Reports or Use of Force Reports completed by officers, nor the recipient of "Grievance Forms" completed by inmates. (*Id.*) Instead, these reports were addressed to various officers at different ranks. Lt. Crum is directly named as a recipient of five letters from officers summarizing incidents involving Ortiz. (*Id.* at PageID 243–44, 246–48.) In four of the five, the letter is jointly addressed to other officers alongside Lt. Crum. (*Id.*) Moreover, all of the final "Pre-Disciplinary Conference" formal write-ups in the record were written by a Captain at the Sheriff's Office, and sent "to the Sheriff for consideration of disciplinary action." (*Id.* at PageID 252–55, 282–84.) For example, an initial report letter on May 6, 2013, was addressed to "Lt. Crum / JA Laubenthal / Captain Hammond," and explained likely violations. (*Id*. at PageID 248–50.) Another Captain then wrote the final report sent to the Sheriff on June 13, 2013, which detailed the incident and concluded, "there is evidence to show that there was a violation." (*Id*. at PageID 255.) The same general sequence of events is also true of the incidents that occurred in 2005. (*Id*. at PageID 246, 281–82.) There is no evidence that Lt. Crum had any responsibility to determine whether Ortiz should be terminated for the past incidents.  The record does not support a reasonable inference that Lt. Crum's conduct caused Koch's injuries.

Since Koch cannot establish negligence, he cannot state a gross negligence claim. Reasonable minds could not find Lt. Crum was wantonly or recklessly negligent, and this exception to Ohio Rev. Code § 2744 immunity does not apply. The court grants Defendants' Motion for Summary Judgment based on state statutory immunity for the individual-capacity claims against Lt. Crum.

### IV. CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion for Summary Judgment (ECF No. 37) as to all federal and state law claims against Defendants Lorain County, Ohio and Lorain

County Board of Commissioners, Sheriff Phil R. Stammitti, and Lieutenant Mike Crum.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

October 31, 2025